4

1   financially independent.
2       Both parties claimed the other was at fault for the
3   breakdown of the marriage. As in most dissolution cases,
4   both parties have contributed, in part, for the marital
5   breakdown. However, the Court believed the wife's
6   testimony. And found it clear and convincing that the
7   defendant's behavior was the primary cause of the
8   breakdown. She described three marital affairs that he
9   had; first one, fifteen years ago, and the second, ten
10  years ago. But the third one was currently--
11  approximately two years ago with a person that worked
12  with the Board of Education. I believe these acts plus
13  the excessive use of alcohol by the defendant contributed
14  primarily to the marital breakdown.
15      The Court will consider the causes of the breakdown
16  in determining the periodic alimony under 46b-82 and also
17  in the division of assets under section 46b-81 of the
18  Connecticut General Statutes. The Court realizes just
19  one of the 14 criteria under the Statute, but will
20  consider it as--in determining the periodic alimony and
21  the division of assets.
22      Based on the testimony of the plaintiff and the
23  defendant, the Court finds that the marriage has broken
24  down irretrievably, and a decree of dissolution shall
25  enter pursuant to section 46b-40(c)(1) of the Connecticut
26  General Statutes.
27      The Court has considered all of the testimony of

1    days from today, when she'll list it. And then the
2    following 30 days, if it's not sold, she will reduce the
3    price by 2%, and every month thereafter.
4        After the payment of all closing costs, including
5    the broker's commission and the mortgage on the property,
6    which I see is $131,680.12, as of this date, the parties
7    shall divide the proceeds equally and after the--the net
8    proceeds equally, after the sale. The Court will retain
9    jurisdiction of this real estate until it is sold and the
10   funds are distributed between these parties equally. The
11   other real estate owned by the parties, two is--the
12   second parcel, is on Stoddard Road in Waterbury. This
13   property is owned by the plaintiff and her sister,
14   Judith Calo; which property was transferred to them by
15   their parents. There is an equity line of credit of
16   $37,891.27. The Court finds it was incurred and used by
17   the defendant for the parties to maintain investments and
18   a liquor store business. There is presently an escrow
19   being held by Attorney Mahaney from the sale of the
20   liquor store and the liquor store property. I will
21   address that later when I address the debts.
22       But the real estate at Stoddard Road shall remain
23   the same title as it is today, between the plaintiff and
24   her sister. And the defendant shall waive any interest
25   he may have in this property. The third piece of
26   property is 26 McCauley Road in Waterbury, Connecticut.
27   This real estate is owned by the defendant and his

1  brother; which property was transferred to them by their
2  parents, and there is no mortgage encumbering this
3  property.  Title to this real estate shall remain in the
4  defendant and his brother.  And the wife shall waive any
5  claim she may have to this real estate.  The Court has
6  said that it retains jurisdiction over the marital home
7  until it's sold.
8      Number two are the stock.  There are stock in a
9  company called SBC shown on the defendant's financial
10 affidavit, having a value of $5000.  The plaintiff will
11 release any interest she may have in the stock to the
12 defendant up to the $5000 figure.  Should it be
13 determined that the stock is worth an excess of $5000, by
14 the attorney for the plaintiff, after consulting the
15 attorney for the defendant, with proof that it is worth
16 more than $5000, the parties shall equally share in the
17 excess above $5000.
18     The pensions, number three.  The defendant husband
19 currently owns two vested pensions.  The first one is
20 with the City of Waterbury which the Court finds has a
21 present vested value of $35,150.  The Court also heard
22 from the administrator of the State Teacher's Pension who
23 testified in this case.  I accept his value for the
24 pension at this time to be $57,057.  There was also
25 testimony by City Employees that the defendant had over
26 $123,000 or 467 days of sick leave which the Court finds
27 will remain his property; and I believe the parties have

8

1   stipulated to that. And the Court will leave that for
2   the defendant, should he need the sick days. And any
3   balance shall belong to him.
4   The plaintiff has no pension plan or retirement
5   funds. The Court will divide the pension as agreed,
6   between these parties, equally--50/50 for both pensions.
7   The attorney for the plaintiff has a stipulated agreement
8   as to this pension. And you left blank the first
9   pension--his teacher's pension. I'm dividing that 50/50.
10  I should include 50% under that blank.
11  MR. MAHANEY: That's--I left it blank because I
12  wasn't--when it was prepared I wasn't sure what
13  Mr. Potash and I were going to do.
14  THE COURT: Okay. But it's 50/50. It's--it's
15  determined that they should share equally in this
16  pension. The plaintiff shall be entitled to retirement,
17  to receive 50% of his benefit in the City of Waterbury
18  pension. Furthermore, as to the State of Connecticut
19  pension, the member and co-participant is ordered and
20  required to select option D; 100% for the life of
21  Martin J. Galvin and Sylvia Galvin--
22  MR. MAHANEY: Cynthia--Cynthia Galvin, Your Honor.
23  THE COURT: This should be signed--
24  MR. MAHANEY: Cynthia Galvin. You said Sylvia.
25  THE COURT: Of course, Cynthia Galvin.
26  You should execute that and keep it until you--until you
27  think it's--until he retires and you submit it at anytime

69

1   A   No, I'm not.

2   Q   When did that cease?

3   A   When did what --

4   Q   Your probation.

5   A   For drinking?

6   Q   Yes.

7   A   I was never on probation for drinking. I was on
8   probation for reckless driving.

9   Q   I see. But the arrest -- that was a DWI arrest,
10  correct?

11  A   That's what the officer tried to do, yes.

12  Q   And that was negotiated down to a reckless?

13  A   Correct.

14  Q   Have you had any recent difficulty in Cape Cod or
15  Massachusetts?

16          MR. POTASH: Objection, Your Honor. Post judgment,
17      post dissolution, if that's what he's talking about.

18          MR. MAHANEY: It goes directly to the issue of this
19      gentleman's drinking.

20          THE COURT: Yes, I'm going to allow it to come in.
21  BY MR. MAHANEY:

22  Q   Have you had any recent difficulty while you were away,
23  either up at Cape Cod or anywhere in Massachusetts?

24  A   Fourth of July there was an argument with myself and
25  Mr. Louis Nickonello, Jr., that family that we were involved
26  with in the lawsuit on.

27  Q   Were you arrested for disorderly conduct?

70

| | | |
|---|---|---|
| 1 | A | No, I was not. |
| 2 | Q | Were you arrested at all? |
| 3 | A | No, I was not. |
| 4 | Q | Was there alcohol involved in this argument? |
| 5 | A | It was a Fourth of July party, yes. |
| 6 | Q | Were you drinking? |
| 7 | A | Yes, I was drinking. |
| 8 | Q | Was that the cause of the argument? |
| 9 | A | No, it was not. It was just comments. |
| 10 | Q | Did you lose your temper? |
| 11 | A | At his comments, yes. |
| 12 | Q | Did you smash around some furniture? |
| 13 | A | No. |
| 14 | Q | And you weren't arrested? |
| 15 | A | No, I was not. |
| 16 | Q | Okay. You're not now under arrest in Massachusetts? |
| 17 | A | No, I'm not. |
| 18 | | MR. MAHANEY: No further questions. |
| 19 | | MR. POTASH: Three questions. |
| 20 | | THE COURT: Okay. |
| 21 | | MR. POTASH: I promise only three questions. |
| 22 | | THE COURT: Yes, okay. |

23  RE-CROSS-EXAMINATION BY MR. POTASH:

24     Q    Mr. Galvin, how much did the plane ticket to Florida
25  cost?
26     A    One fifty.
27     Q    And how much did it cost for you to stay up in Cape